IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL CASE NO. 1:10cv113

| | |
|---|---|
| DANNY RAY BRIDGES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| ALVIN W. KELLER, JR., Secretary of the ) | |
| North Carolina Department of Corrections; ) | |
| JOHN DOE 1, M.D.; S. KILLEY, L.P.N.; ) | |
| BOB HAGGARD; JOHN MORGAN, F.N.P.; ) | |
| JOHN DOE 2; and KEITH KUHNE, M.D.; ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on the following motions:

1. The Motion for Summary Judgment of Defendants Keller, Kilby and Haggard [Doc. 14];

2. The Motion to Dismiss of Defendants Payton Turpin, M.D. (Upon Information and Belief John Doe I), Albert Keith Kuhne, M.D. and John Morgan, F.N.P. [Doc. 20]; and

3. The Plaintiff's Motion for Limited Expedited Discovery and Conditional Motion pursuant to Federal Rule of Civil Procedure 56(f) to Deny the

1

Motion for Summary Judgment of Defendants Kilby and Haggard or, alternatively, to Order a Continuance to Allow Discovery [Doc. 24].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, United States Magistrate Judge David S. Cayer was designated to consider the dispositive motions and to submit recommendations for their dispositions. He was also designated to consider the motion for pre-trial discovery and to rule thereon.

On January 3, 2011, the Magistrate Judge filed a Memorandum and Recommendation in which he granted the motion for limited discovery and recommended denying the motions for summary judgment and to dismiss without prejudice. [Doc. 32]. The Defendants timely filed objections to the grant of limited discovery as well as to the recommendations for ruling on the dispositive motions.[1] [Doc. 33; Doc. 35].

## PROCEDURAL HISTORY

The Plaintiff initiated this action pursuant to 42 U.S.C. §1983 on June 2, 2010 claiming that the Defendants were deliberately indifferent to his

---

[1] The Defendants filed two separate pleadings in support of their objections. One pleading was captioned as objections and the other was captioned as a supporting brief. [Docs. 33- 36]. For future reference, defense counsel are advised that only one document should be filed within which should be contained their objections to the Memorandum and Recommendation and all arguments in support of their positions.

2

serious medical needs resulting from a torn rotator cuff. The Plaintiff alleges that during his arrest on January 9, 2005 by Rutherford County deputy sheriffs, he sustained a serious injury to his left shoulder. [Doc. 1, at 3-4]. On that same day, he was treated for the injury at the emergency department of Rutherford County Hospital. [Id.]. Two days later, while still in the custody of the Rutherford County Sheriff, the Plaintiff requested additional treatment. [Id.]. No further allegation is made concerning his treatment while in the custody of the Rutherford County Sheriff.

The Plaintiff next alleges that on January 13, 2006, he was convicted and sentenced in state court to an 18 year sentence and placed in the custody of the North Carolina Department of Corrections (DOC). [Id.]. The incidents which form the basis of the claims alleged in the Complaint began in August 2006 when the Plaintiff complained of shoulder pain which he had been experiencing since he was injured during his arrest. [Id.]. He was seen during that month by Defendant Kilby,[2] a licensed practical nurse at Craggy Correctional Center (Craggy) and also on August 22, 2006 by Defendant John Doe I, who has been identified as Dr. Turpin. [Id., at 5-6; Doc. 20]. Dr. Turpin treated the Plaintiff at Craggy for his shoulder pain and opined that the Plaintiff was malingering, an opinion purportedly adopted that same month by

---

[2]This Defendant was erroneously identified as "Killey." [Doc. 15, at 1].

Defendant Haggard, a registered nurse who was working at Craggy. [Doc. 1, at 5-6; Doc. 15, at 1].

The Plaintiff's next allegation concerning medical care is that on two occasions in January 2007, he requested treatment for his shoulder pain. [Id.]. The Plaintiff alleges that Defendant John Doe II, who remains unidentified, suspected a torn rotator cuff but the Plaintiff was not evaluated for that injury. [Id.].

In August 2008, the Plaintiff continued to complain of pain to his left shoulder and was examined by Defendant Haggard in September 2008. [Id., at 7]. Haggard did not order further tests to rule out a torn rotator cuff and the Plaintiff claims that the treatment provided was deliberately indifferent to the level of pain he was suffering. [Id.]. In late September 2008, Defendant Kuhne, a physician at Craggy, examined the Plaintiff and concluded that his symptoms were exaggerated. [Id.].

In the meantime, the Plaintiff had sued the arresting officers and in the context of that litigation, he underwent a MRI of his shoulder in February 2009. [Id., at 8; Doc. 24-2]. The radiologist diagnosed a "full thickness rotator cuff tear." [Doc. 1, at 8]. This diagnosis was confirmed by Dr. Stephen Brockmeier, an orthopedic surgeon, who recommended arthroscopic rotator cuff repair because the previous course of treatment had a "low likelihood of

4

significant functional or symptomatic improvement given his current circumstance." [Id.]. The results of these examinations were provided to the DOC. [Id.].

The Plaintiff admits that because of the medication he was taking for two unrelated medical conditions, he was not a candidate to have the arthroscopic surgery until "late 2009." [Id., at 8-9]. At the time the Complaint was filed in June 2010, the surgery had not been scheduled. [Id.]. The surgery was, however, performed in July 2010 and the Plaintiff has since received the required physical therapy. [Doc. 20; Doc. 25, at 2 n.3].

The Plaintiff's claim is based on deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Although he also sought injunctive relief requiring that he be provided with the necessary surgery and physical therapy, the Plaintiff concedes that this claim may be dismissed without prejudice in view of the fact that he has received the surgery and is receiving on-going physical therapy. [Doc. 25, at 2 n.3].

After being served with the Complaint, Defendants Keller, Kilby and Haggard answered[3] and simultaneously moved for summary judgment arguing: (1) the Plaintiff failed to exhaust his administrative remedies because

---

[3]These defendants asserted a qualified immunity defense in their Answer. [Doc. 13].

5

he failed to file a grievance related to his medical care;[4] (2) the claims against Defendant Kilby are barred by the three year statute of limitations applicable to §1983 claims; (3) there is no cause of action against licensed and/or practical nurses; *i.e.*, Defendants Haggard and Kilby, for failure to diagnose; and (4) qualified immunity precludes suit against each of these defendants. [Doc. 15].

Defendants Turpin, Kuhne, and Morgan also answered and simultaneously moved to dismiss stating: (1) the claims against Dr. Turpin are barred by the statute of limitations; (2) the Plaintiff failed to exhaust his administrative remedies; (3) the Plaintiff has failed to allege facts sufficient to support a claim of deliberate indifference to medical need and/or treatment; (4) the Complaint fails to contain allegations of any personal involvement of Defendant Morgan; and (5) the Complaint fails to state a claim for injunctive relief because the Plaintiff received surgery on his shoulder in July 2010. [Doc. 21]. In their Answer, these defendants asserted a defense of qualified immunity; however, they did not move to dismiss based on that defense. [Doc. 19].

In response to these motions, the Plaintiff moved for limited, expedited discovery as to the following matters: (1) the identities of all healthcare

---

[4]The Plaintiff did file a grievance unrelated to medical care.

workers under contract with DOC who consulted with the Plaintiff or who provided treatment to him concerning his left shoulder; (2) the dates on which such consultations and/or treatment were provided; (3) the production of documents relating to the Plaintiff's requests of healthcare workers under contract with DOC for diagnosis and treatment of his left shoulder; (4) the production of documents relating to consultations which the Plaintiff had with healthcare workers under contract with DOC related to his left shoulder; (5) the production of documents relating to diagnosis and treatment of the Plaintiff by healthcare workers under contract with DOC related to his left shoulder; (6) copies of the Plaintiff's medical records with the DOC; and (7) the production of DOC protocols and/or policies applicable to healthcare providers under contract with DOC, particularly the protocols referenced in the Answer of Defendants Keller, Kilby and Haggard. [Doc.24]. The Plaintiff states in the motion that he has not been able to obtain such information because no discovery has occurred in this action. He also notes that while he has obtained some information from his litigation against the arresting deputy sheriffs, he lacks documentation showing the dates of his treatment and the identities of the treating healthcare workers during his incarceration. Thus, the records may show the specific dates of treatment which may defeat the argument that the statute of limitations has expired. One defendant remains

7

identified only as John Doe II and the Plaintiff may be able to identify this defendant through discovery. The Plaintiff's treatment records will show the actual course of treatment which, he claims, will defeat the remaining defenses of the Defendants. The Plaintiff has nonetheless conceded that the claim for injunctive relief should be dismissed. [Doc. 29, at 2 n.2]. He also conceded that any claim against Defendant Morgan should be dismissed without prejudice. [Id., at 3 n.3].

The Magistrate Judge granted the Plaintiff's motion for limited, expedited discovery, requiring the Plaintiff to serve specific interrogatories and requests for the production of documents limited to the seven issues described above and requiring the Defendants' timely responses. [Doc. 32]. The Magistrate Judge noted that discovery would most likely result in an amended complaint. As a result, the Magistrate Judge recommended that the pending motions to dismiss and for summary judgment be dismissed. From the Order allowing discovery the Defendants have appealed, and as to the recommendation that the Motions for Summary Judgment and to Dismiss be denied, the Defendants have objected.

**STANDARD OF REVIEW**

The Plaintiff has moved pursuant to Federal Rule of Civil Procedure 56(f) for limited discovery. That Rule provides in pertinent part:

8

> If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) deny the motion;
>
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
>
> (3) issue any other just order.

Fed.R.Civ.P. 56(f).

In response to the motion to dismiss, the Plaintiff has requested an opportunity to conduct limited, expedited discovery. [Doc. 29]. Rule 26(d)(1) provides that a party may not seek discovery prior to the Rule 26(f) conference, except "when authorized by ... court order." Fed.R.Civ.P. 26(d)(1).

The Magistrate Judge's Order granting discovery is non-dispositive and thus, subject to review for any portion thereof which is "clearly erroneous" or "contrary to law." A decision is "clearly erroneous" when, following a review for clear error of fact, the district court "is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); Plant v. Merrifield Town Center Ltd. Partnership, 711 F.Supp.2d 576, 588

(E.D.Va. 2010); Federal Sav. and Loan Ins. Corp. v. Commonwealth Land Title Ins. Co., 130 F.R.D. 507 (D.D.C. 1990). A decision is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co., 592 F.Supp.2d 1087, 1093 (N.D.Iowa 2008).

The Defendants have also objected to the Magistrate Judge's recommendation that the motions for summary judgment and to dismiss be denied without prejudice to renewal once limited, expedited discovery has occurred. A district court reviews specific objections to a Memorandum and Recommendation under a *de novo* standard. 28 U.S.C. §636(b). "Parties filing objections must specifically identify those findings objected to." Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir.1987), *overruled on other grounds* Douglass v. United Ervs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996). If a party makes only general objections, *de novo* review is not required. Wells v. Shriners Hospital, 109 F.3d 198, 200 (4th Cir. 1997)(boilerplate objections will not avoid the consequences of failing to object altogether).

> Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only *those portions* of the report or

*specified* proposed findings or recommendations *to which objection is made*.

United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007), *certiorari denied* 551 U.S. 1157, 127 S.Ct. 3032, 168 L.Ed.2d 749 (2007) (emphasis in original). Likewise, merely citing to or reiterating the same arguments made in the pleading submitted to the Magistrate Judge does not warrant *de novo* review. Id.; Veney v. Astrue, 539 F.Supp.2d 841, 846 (W.D.Va. 2008). "Allowing a litigant to obtain *de novo* review of her entire case by merely reformatting an earlier brief as an objection 'mak[es] the initial reference to the magistrate useless.'" Id. In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Midgette, 478 F.3d at 622. The Court notes that all of the Defendants have attempted to "incorporate" the arguments made in the pleadings filed before the Magistrate Judge. [Doc. 34; Doc. 36].

## DISCUSSION

The Court will first consider the Defendants' claims that the Magistrate Judge erred in allowing discovery. If the Court finds the Magistrate Judge's decision is not clearly erroneous or contrary to law, then the grant of limited, expedited discovery will moot the pending motions for summary judgment and

11

to dismiss.

The Defendants argue that the order allowing discovery overlooks the fact that the Plaintiff is barred from bringing this lawsuit because he failed to exhaust his administrative remedies. The Plaintiff acknowledges that he pursued no administrative remedies, but argues that he was not required to do so under the circumstances. The DOC agreed to provide him with the necessary surgery as soon as it received the results of the February 2009 MRI and Dr. Brockmeier's March 2009 opinion that surgery was required. [Doc. 24-2, at 2-4]. Thus, Plaintiff argues that he had "no reason to suspect [until that time] ... that the care the DOC healthcare providers provided to me was inadequate or that the DOC healthcare providers had failed to provide me with proper treatment and had been consciously indifferent to my serious medical condition." [Doc. 24-1, at 9]. He also states that because DOC made plans to have surgery performed in early 2009, he also did not have any reason at that time to file a grievance. [Id., at 9-14].

In fact, after Dr. Brockmeier's opinion was provided to DOC, it selected Dr. Sladicka, another orthopedic surgeon, to evaluate the Plaintiff's condition and provide the necessary surgery. [Id., at 5]. In May 2009, Dr. Sladicka saw the Plaintiff for a preoperative consultation prior to his rotator cuff surgery. [Id.]. During that consultation, the Plaintiff advised Dr. Sladicka that he was

currently taking certain medications to treat his hepatitis C and tuberculosis. [Id.]. As a result, Dr. Sladicka recommended that the rotator cuff surgery be delayed until that course of treatment was completed. [Id., at 5; 40]. The Plaintiff thus notes that he had no reason to file a grievance because by the time he learned of the prior conscious indifference the DOC had already made plans to provide the needed surgery.

Section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title .... by a prisoner confined in any ... correctional facility until such administrative remedies *as are available* are exhausted." (emphasis provided). "Administrative remedies may be considered unavailable in cases where an inmate receives a favorable ruling through the administrative process and the prison system fails to implement the suggested remedy." Veloz v. New York, 339 F.Supp.2d 505, 513 (S.D.N.Y. 2004), *affirmed* 178 Fed.Appx. 39 (2nd Cir. 2006). The Plaintiff claims, and the Defendants do not dispute, that the DOC agreed to provide the surgery once it learned of its necessity and the parties agreed to postpone the surgery until the Plaintiff's course of medication was completed. He thus received a "favorable ruling" and was waiting for the implementation thereof.

> [The] doctors properly diagnosed plaintiff [in March 2009], promising "further care and treatment in the near future." [A]

13

> request for a final pre-operative consultation and surgery was [completed]. The indications to the plaintiff were rather clear that he had obtained a remedy in the form of incremental action in the direction of surgery, and a promise of surgery in the near future. ... A prisoner would understandably construe this [result] as granting available remedies and, implicitly, as a reliable indication that no further appeal was available or necessary.

Lay v. Hall, 2007 WL 137155 **6 (E.D.Cal. 2007); Dixon v. Page, 291 F.3d 485, 490 (7th Cir. 2002) (the prison cannot fail to follow through on promised action and yet fault the prisoner for failing to complete the administrative review process).

To the extent that the Plaintiff relied on the expressed determination that the surgery would be "implemented," the Defendants may not now claim he should have filed a grievance while waiting for that implementation. Veloz,,339 F.Supp.2d at 513. ("defendants are estopped from raising this defense based on their own behavior, such as inhibiting an inmate from grieving."), *citing* Ziemba v. Wezner, 366 F.3d 161, 163 (2nd Cir. 2004). In other words, waiting for the surgery which had been promised constituted a "'special circumstance[]' ... that justif[ied] 'the prisoner's failure to comply with administrative procedural requirements.'" Hemphill v. New York, 380 F.3d 680, 686 (2nd Cir. 2004) (citations omitted); Ruggiero v. County of Orange, 467 F.3d 170, 176 (2nd Cir. 2006) (noting a failure to implement corrective action may excuse further grievance); Basham v. Correctional Medical Services,

Inc., 2007 WL 2481338 (S.D.W.Va. 2007) (remedies unavailable if prisoner unable to effect due to physical injury); James v. Davis, 2006 WL 2171082 (D.S.C. 2006) (special circumstances justified failure to comply). The Court therefore concludes that Plaintiff has articulated a basis for a factual dispute regarding whether he failed to exhaust his administrative remedies, which issue necessitates the dismissal of the Motion for Summary Judgment as premature and required that discovery go forward as to that issue.

Next, Defendants Keller, Kilby and Haggard claim that they are entitled to a decision on their claim of qualified immunity prior to any discovery being allowed in the action. They argue that a claim of failure to diagnose does not raise a constitutional issue absent proof of abuse, intentional mistreatment or denial of medical attention. Thus, they argue that qualified immunity precludes even limited discovery. The Plaintiff responds that his claim is not limited to a failure to diagnose; but, in any event, he alleges there was intentional mistreatment, denial of medical attention and abuse by depriving him of adequate medical care for a period of years.

Qualified immunity shields government employees performing discretionary functions from civil liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727,

73 L.Ed.2d 396 (1982). "The basic question for a court adjudicating a defense of qualified immunity, ... is whether the official would have reasonably known his [or her] conduct violated clearly established law." Delph v. Trent, 86 F.Supp.2d 572, 575 (E.D.Va. 2000). The conduct at issue is whether Keller condoned or created policies or customs which allowed the Plaintiff to be injured and whether all three Defendants failed to provide adequate medical care. Id., *citing* Monell v. Department of Soc. Serv. of New York, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (supervisors may be liable for deliberate indifference to constitutional torts committed by employees in furtherance of official policies).

> The plaintiff in [this] action alleges that his injuries resulted from policies, procedures, or customs in the [DOC]. Plaintiff, however, can only describe those isolated incidents in which he was injured or was denied appropriate medical care. Plaintiff has not shown that other inmates were also injured by these policies, procedures or customs, nor has plaintiff identified these policies, procedures, or customs with specificity. As a result, plaintiff has requested discovery to enable him to better establish his claims[.] Generally, discovery is not appropriate when a defense of qualified immunity has been raised.
>
> ...
> The Supreme Court, however, has allowed limited discovery in the face of a qualified immunity defense, subject to the discretion of the trial court. In doing so, the Court has constructed two hurdles the plaintiff must overcome to win the right to discovery. First, the trial court must insure that plaintiff has alleged a cognizable injury with sufficient specificity that officials are not subject to burdensome or unnecessary discovery. ... Second, ... the trial court must then resolve the threshold issue of immunity before

> proceeding to discovery. In doing so, the trial court must determine whether the officials violated clearly established law, assuming the plaintiff's allegations as true. If so, the plaintiff may be entitled to discovery, subject to the discretion of the trial court and the limits of Rule 26.

Id., *citing* Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed. 759 (1998).

Taking the Plaintiff's allegations as true, he has stated a claim for a violation of clearly established law. He has claimed violations of his Eighth Amendments rights, premising liability on deliberate indifference to his serious medical needs both by individual conduct and policies. DiMeglio v. Haines, 45 F.3d 790, 795 (4th Cir. 1995) ("In instances where there is a material dispute over what the defendant did, and under the plaintiff's version of the events the defendant would have, but under the defendant's version he would not have, violated clearly established law, it may be that the qualified immunity question cannot be resolved without discovery."). While the Defendants claim the Plaintiff has only alleged a failure to diagnose on their part, the Plaintiff responds that these Defendants were intentionally and abusively indifferent to his serious medical needs and recurring pain. "[T]his disputed issue of material fact is central to defendants' qualified immunity claim. The Fourth Circuit has held that 'ordering discovery on the issue of immunity ... [is] well within the discretion of the district court.'" H.H. v. Chesterfield County School

17

Bd., 2007 WL 4246487, at **5 (E.D.Va. 2007), *affirmed* 335 Fed.Appx. 306 (4th Cir. 2009), *quoting* American Civil Liberties Union, Inc. v. Wicomico County, 999 F.2d 780, 787 (4th Cir. 1993). Indeed, the Fourth Circuit has found a trial court commits reversible error when discovery is denied in the face of disputed issues of material fact which are central to the claims of qualified immunity. Ingle *ex rel.* Estate of Ingle v. Yelton, 439 F.3d 191, 195-96 (4th Cir. 2006) ("in holding that the defendant officers were entitled to qualified immunity, the district court relied almost exclusively on the officers' assertions that Christopher aimed his weapon at them. ... Given the facts of this case, the district court could not conduct a thorough assessment of the officers' statements without allowing discovery[.]"). "[C]ourts should hesitate before denying Rule 56(f) motions when the party opposing summary judgment is attempting to obtain necessary discovery of information possessed only by [his] opponent." Id, at 196-97, *citing* Willis v. Town of Marshall, 426 F.3d 251, 264 (4th Cir. 2005); *accord*, McMillian v. Wake County Sheriff's Dept., 2010 WL 4366478 (4th Cir. 2010) (denial of discovery request to evaluate whether officer entitled to qualified immunity reversible error). The Court therefore rejects the argument that qualified immunity must be determined without the limited discovery sought.

The Defendants' remaining objections relate to the statute of limitations

18

defense and arguments that the Plaintiff has not shown deliberate indifference to serious medical needs, merely a failure to diagnose and disagreement over treatment options. As previously discussed, the limited discovery sought by the Plaintiff is directed to those defenses as well. Defendants also object to the Magistrate Judge's failure to address the motion to dismiss the punitive damages claim. The Court concludes that any ruling on that issue is also premature in light of the grant of limited discovery. In addition, the Defendants urgently argue that amendment of the complaint would be futile and thus should not be allowed. There is no motion pending for leave to amend and the Court will not address the issue. To the extent that relief was sought in the motions which has not been specifically addressed herein, the Court finds the motions premature.

**ORDER**

**IT IS, THEREFORE, ORDERED** that as to the Magistrate Judge's Order [Doc. 32] **GRANTING** the Plaintiff's Motion for Limited Expedited Discovery and Conditional Motion pursuant to Federal Rule of Civil Procedure 56(f) to Deny the Motion for Summary Judgment of Defendants Kilby and Haggard or, alternatively, to Order a Continuance to Allow Discovery [Doc. 24] the same is hereby **AFFIRMED** and the Defendants' objections thereto and appeal

therefrom are overruled.

**IT IS FURTHER ORDERED** that the Defendants' Objections to the Memorandum and Recommendation of the Magistrate Judge as to the Motion for Summary Judgment of Defendants Keller, Kilby and Haggard [Doc. 14] are overruled and said Motion is hereby **DENIED** without prejudice to renewal upon the completion of discovery;

**IT IS FURTHER ORDERED** that the Defendants' Objections to the Memorandum and Recommendation of the Magistrate Judge as to the Motion to Dismiss of Defendants Payton Turpin, M.D. (Upon Information and Belief John Doe I), Albert Keith Kuhne, M.D. and John Morgan, F.N.P. [Doc. 20] are overruled and said Motion is hereby **DENIED**. These Defendants may move for summary judgment, if appropriate, upon the completion of discovery.

**IT IS FURTHER ORDERED** that the Plaintiff's claims against John Morgan, F.N.P. are hereby **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the Plaintiff's claim for injunctive relief is hereby **DISMISSED** without prejudice.

Signed: February 3, 2011

Martin Reidinger
United States District Judge