IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
NO. 1:10-CV-113-MR-DSC

| | |
|---|---|
| DANNY RAY BRIDGES, | ) |
| Plaintiff, | ) |
| v. | ) |
| ALVIN W. KELLER JR., et. al., | ) |
| Defendants. | ) |

## **MEMORANDUM AND RECOMMENDATION AND ORDER**

**THIS MATTER** is before the Court on Defendants Turpin, Kuhne, and Searles' "Motion to Dismiss" (document #65), Defendants Keller, Smith and Haggard's "Motion to Dismiss ... " (document #68), and "Plaintiff's Motion to Strike [Defendants Turpin, Kuhne, and Searles'] Reply Brief ... or Alternatively, Motion for Leave to File Limited Surreply" (document #74), and the parties' associated briefs and exhibits. See documents ## 67, 69, 70, 73, 75-78.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) and the subject Motions are ripe for disposition.

The undersigned has considered all of the parties' submissions, including Defendants Turpin, Kuhne, and Searles' Reply brief and Plaintiff's Surreply,[1] and accordingly, "Plaintiff's Motion to Strike Reply Brief ... or Alternatively, Motion for Leave to File Limited Surreply" (document #74) is granted in part and denied in part.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendants' Motions to Dismiss be granted, as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 2, 2010, Plaintiff Danny Ray Bridges, an inmate in the North Carolina Department of Correction ("DOC"), filed his Complaint, which as amended, alleges claims under 42 U.S.C. § 1983 arising from Defendants' and other North Carolina Department of Correction ("DOC") healthcare providers' alleged deliberate indifference to his severe medical condition involving a torn rotator cuff in his left shoulder.

Accepting the factual allegations of the First Amended Complaint as true, Plaintiff's left shoulder was injured in January 2005 by Rutherford County Sheriff's deputies who arrested him at his residence. "First Amended Complaint" (Document #57) ¶ 11. Plaintiff complained of left shoulder pain and was taken to a local hospital where he received treatment for his injuries. Id. at ¶ 16. On January 11, 2005, while in custody of the Rutherford County Sheriff's Department, Plaintiff completed a written sick call form where he reported "problems with his left shoulder and back." Id. at ¶ 17.

---

[1] Plaintiff's alternative Motion for Leave to File Limited Surreply states that his Surreply contains portions of previously submitted briefs. See documents ##26 and 29.

2

Plaintiff was placed in DOC custody on January 13, 2006. Id. at ¶ 18. He did not complain of left shoulder pain again until August 10, 2006, when he was incarcerated at Craggy Correctional Center ("Craggy"). Plaintiff was examined by Sharon Kilby, a Licensed Practical Nurse. In accord with a "Joint Trauma Sprain / Fracture / Dislocation [P]rotocol," Kilby prescribed ibuprofen for Plaintiff and scheduled an x-ray of his left shoulder. Id. at ¶ 23. Defendant Payton Turpin, M.D. either reviewed Nurse Kilby's notes or discussed them with her. Id. at ¶ 24. On August 21, 2006, Plaintiff was seen again by Nurse Kilby. Plaintiff complained that the medication he received for pain was not effective and that he still had pain in his shoulder. Id. at ¶ 26. The next day, Plaintiff was examined by Dr. Turpin, who noted that Plaintiff's August 14, 2006 x-ray was normal. Id. at ¶¶ 25, 30-31. Dr. Turpin suspected Plaintiff of malingering, id. at ¶ 33, but on August 29, 2006, he administered a steroid injection to Plaintiff's left shoulder. Id. at ¶ 35.

Plaintiff's next complained of shoulder pain on January 10, 2007, when he submitted a sick call request at Lincoln Correctional Center ("Lincoln"). On January 23, 2007, Plaintiff submitted an additional sick call request stating he had severe pain in his left shoulder and had not received medical attention for his previous sick call request. Id. at ¶¶ 38, 39. On January 29, 2007, Plaintiff was examined by Defendant Anthony Searles, M.D. at Lincoln. Dr. Searles' notes from that examination include "R/O [rule out] rotator cuff--R/O [rule out] tendinitis." Id. at ¶ 41. Dr. Searles prescribed Tylenol, analgesic cream, and range of motion exercises. Id. at ¶ 42.

Plaintiff did not complain of shoulder pain again until August 27, 2008, when he submitted a sick call request while incarcerated at Craggy. He complained of severe pain in his

left shoulder and neck and inability to use his left arm. On September 3, 2008, Plaintiff was examined by Defendant Robert Haggard, who is a nurse.[2]  Id. at ¶¶ 43, 44.  On or about September 25, 2008, Plaintiff was examined by Defendant Keith Kuhne, M.D.  Dr. Kuhne noted that Plaintiff had accused an officer of beating him several years ago.  He believed Plaintiff was exaggerating his symptoms.  Dr. Kuhne ordered additional steroid injections for Plaintiff.  Id. at ¶¶ 50, 52.

Other than his July 2010 surgery discussed below, Plaintiff does not allege that he sought treatment for shoulder pain from any DOC healthcare providers after September 2008.  In connection with an earlier lawsuit (filed against the sheriff's deputies who arrested him), Plaintiff obtained a court order directing his release from DOC to have an MRI performed on his left shoulder. An MRI was performed on February 25, 2009.  The test report indicated "full thickness rotator cuff tear."  Id. at ¶¶ 70-71.  On March 31, 2009, Plaintiff had an independent medical examination by an orthopaedic surgeon who concluded Plaintiff had a "large retracted rotator cuff tear, chronic" of his left shoulder.  Id. at ¶ 73.

In July 2010, Plaintiff underwent surgery to repair his left shoulder rotator cuff.  Id. at ¶ 77.  Plaintiff alleges that because of the four year delay in obtaining effective treatment, he will "likely" suffer significant and permanent loss of use of his left shoulder and arm.  Id. at ¶¶ 77-78.

Concerning the remaining Defendants, Plaintiff alleges that Defendant Paula Smith, M.D., DOC's Medical Director, "is directly responsible for" the DOC Health Services

---

[2]The record does not reflect what type of nursing license (R.N., L.P.N., etc.) Defendant Haggard holds.

Utilization Review process. Id. at ¶ 53. Plaintiff further alleges that Dr. Smith reviewed the results of Plaintiff's physical examinations and treatment recommendations. Id. at ¶ 55.

Plaintiff also alleges that in her capacity as Medical Director, Dr. Smith is responsible for the "creation and implementation" of treatment protocols for inmates, including the Joint Trauma Protocol ("JT Protocol") followed by Nurse Kilby. Id. at ¶¶ 58-59. Plaintiff alleges that the JT Protocol is inadequate and resulted in deliberate indifference by Defendants to Plaintiff's serious medical need. Id. at ¶¶ 60-61, 63, 98.

Finally, Plaintiff alleges that Defendant Secretary of Correction Alvin W. Keller, Jr., adopted and approved the JT Protocol followed by Nurse Kilby. Id. at ¶¶ 63, 96. Plaintiff alleges that Dr. Smith developed and Secretary Keller adopted the JT Protocol to discourage the use of MRIs or other diagnostic tests for soft tissue injuries in order to reduce costs. Plaintiff argues that the JT Protocol resulted in deliberate indifference to his condition. Id. at ¶¶ 65-66, 69.

In response to Plaintiff's initial Complaint, Defendants filed dispositive Motions. See "Motion for Summary Judgment" (document #14) and "Motion to Dismiss" (document #20).

Plaintiff responded with his "Motion for Limited Expedited Discovery ..." (document #24), which the Court granted on January 3, 2011. The purpose of this limited discovery was to "enable [Plaintiff] to identify the numerous healthcare providers from which he sought relief for his severe injury or the dates of service on which he was treated by each of them." "Memorandum and Recommendation and Order" at 2 (document #32). "Because it appear[ed] likely that Plaintiff w[ould] file an Amended Complaint, which w[ould] moot the pending dispositive Motions, [the undersigned] respectfully recommend[ed] that [Defendants' initial

dispositive] Motions be denied without prejudice to Defendants' right to re-file motions raising the same and/or other issues at the appropriate time." Id. at 3.

On February 3, 2011, the Honorable Martin Reidinger (the District Judge to whom this case is assigned) overruled Defendants' objections to the Memorandum and Recommendation and Order. See "Order" (document #39).

On September 27, 2011, and following the conclusion of limited discovery, the Court granted Plaintiff leave to file his First Amended Complaint.

On October 17 2011, Defendants Turpin, Kuhne, and Searles filed their "Motion to Dismiss" (document #65) and on October 24, 2011, Defendants Keller, Smith and Haggard filed their "Motion to Dismiss ... " (document #68).

Defendants' Motions have been fully briefed and are ripe for disposition.

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct.

1937, 1960 (2009), quoting Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. 129 S. Ct. at 1951. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1951 (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true), citing Twombly, 550 U.S. at 554-55. Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1950.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 1951. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id., quoting Fed. R. Civ. P. 8(a)(2). In other words, if after taking the complaint's well-pleaded

7

factual allegations as true, a lawful alternative explanation appears a "more likely" cause of the complained of behavior, the claim for relief is not plausible. Id. at 1951-52.

  B. **Section 1983 Deliberate Indifference Claim**

Plaintiff asserts that he is entitled to recover damages under 42 U.S.C. § 1983 because Defendants Turpin, Kuhne, Searles and Haggard failed to address his shoulder injury and failed to diagnose a torn rotator cuff. In order to recover under § 1983, Plaintiff must (1) clearly identify the protected Constitutional right that was violated and (2) set forth sufficient factual allegations to support such violation. West v. Atkins, 487 U.S. 42, 48 (1988) (holding that in order to state a § 1983 claim, a plaintiff must "allege the violation of a right secured by the Constitution and laws of the United States"). Furthermore, 42 U.S.C. § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those part of the United States Constitution…." Baker v. McCollan, 443 U.S. 137, 144, fn. 3 (1979).

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment must fall within the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). In order to state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mount Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so

grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard--a showing of mere negligence will not meet it."). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). In Johnson v. Quinones, the Fourth Circuit Court expressly rejected the argument that a diagnosis of malingering constitutes evidence of deliberate indifference. Instead, where context shows medical treatment was provided, such a diagnosis is more consistent with a missed or mistaken diagnosis. Johnson, 145 F.3d at 169. "Even if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976). The constitutional right is to medical care. No right exists to the type or scope of care desired by the individual prisoner. Id. at 763.

A disagreement "between an inmate and a physician over the inmate's proper medical care [does] not state a § 1983 claim unless exceptional circumstances exist." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (dismissing the plaintiff's § 1983 claim against a defendant physician for allegedly discharging the plaintiff too early from a medical clinic, as such claim

did not rise to the level of deliberate indifference but would, "at most, constitute a claim of medical malpractice").

In <u>Caraway v. Beck, et al.</u>, the United States District Court for the Eastern District of North Carolina dismissed a § 1983 complaint alleging deliberate indifference to a shoulder dislocation injury for failing to state a claim for relief. Plaintiff did not allege that the defendants "knowingly disregarded his shoulder injury…" <u>Caraway v. Beck, et al.</u>, 5:09-CT-3189, 2010 WL 3386846, *6 (E.D.N.C. Aug. 23, 2010).

Applying these legal principles, the factual allegations in the First Amended Complaint taken as true do not rise to the level of deliberate indifference required for a valid § 1983 Eighth Amendment claim, but "at most, constitute a claim of medical malpractice." <u>Wright</u>, 766 F.2d at 849. As discussed above, on every occasion that Plaintiff complained of shoulder pain, he was examined and treated. The facts Plaintiff alleges concerning his treatment while in DOC custody fall far short of establishing that Defendants were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Miltier</u>, 896 F.2d at 851. Instead, Plaintiff's factual allegations establish that medical treatment was provided and that Defendants failure to diagnose his torn rotator cuff is more consistent with a missed or mistaken diagnosis. <u>Johnson</u>, 145 F.3d at 169. See also <u>Iqbal</u>, 129 S. Ct. at 1951-52 (where taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears "more likely" cause of the complained of behavior, the claim for relief is not plausible).

**C. <u>Section 1983 Supervisory Liability Claim</u>**

To establish supervisory liability under § 1983, "a plaintiff must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999), citing, Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.1994). See also Monell v. New York City Dep't of Soc. Serv., 436 U.S. 658, 691 (1978).

For the same reasons discussed above, that Plaintiff has failed to plead an actionable Eighth Amendment violation to his support his underlying § 1983 claim, he has also failed to establish the requisite constitutional injury that is a condition precedent to imputing supervisory liability to Defendants Keller or Smith.

### D. Section 1983 Policy and Procedure Claim

Similarly, in order to serve as the basis for an actionable § 1983 policy and procedure claim, a plaintiff's allegations must show that Defendants' "policy or custom must have played a part in the violation of federal law." Hafer v. Menlo, 502 U.S. 21, 25 (1991). Plaintiff devotes much of his Complaint and brief to his claim that the alleged violation of his constitutional right to medical care resulted from Defendants Keller and Smith's formulation and issuance of the JT Protocol. Plaintiff has failed, however, to plead sufficient facts to support any alleged underlying constitutional violation, and accordingly his policy and procedure claim also fails.

### III. ORDER

**IT IS HEREBY ORDERED** that:

1. "Plaintiff's Motion to Strike [Defendants Turpin, Kuhne, and Searles'] Reply Brief ... or Alternatively, Motion for Leave to File Limited Surreply" (document #74) is **GRANTED IN PART** and **DENIED IN PART**, that is, **GRANTED** as to the alternative relief sought and **DENIED** in all other respects.

2. All further proceedings in this action, including <u>all</u> discovery, are **STAYED** pending the District Judge's ruling on this Memorandum and Recommendation and Order.

## IV. <u>RECOMMENDATION</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendants Turpin, Kuhne, and Searles "Motion to Dismiss" (document #65) and Defendants Keller, Smith and Haggard's "Motion to Dismiss ... " (document #68) be **GRANTED** and that the First Amended Complaint be **DISMISSED WITH PREJUDICE**.

## V. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Diamond</u>, 416 F.3d at 316; <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Wells</u>,

109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to counsel for the parties; and to the Honorable Martin Reidinger.

**SO ORDERED AND RECOMMENDED.**

Signed: January 12, 2012

David S. Cayer
United States Magistrate Judge