# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION

## CIVIL CASE NO. 1:10cv113

| | |
|---|---|
| DANNY RAY BRIDGES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ALVIN W. KELLER, JR., Secretary of the North | ) |
| Carolina Department of Corrections; PAULA Y. | ) |
| SMITH, M.D., individually and in her capacity as | ) |
| Director of Health Services for the North | ) |
| Carolina Department of Corrections; PAYTON | ) |
| TURPIN, M.D.; ANTHONY D. SEARLES, M.D.; | ) |
| ALBERT KEITH KUHNE, M.D.; and ROBERT | ) |
| HAGGARD, R.N., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OF DECISION AND ORDER

**THIS MATTER** is before the Court on the Motion to Dismiss First Amended Complaint of Defendants Payton Turpin, M.D., Albert Keith Kuhne, M.D. and Anthony D. Searles, M.D. [Doc. 65] and the Motion to Dismiss for Failure to State a Claim of Defendants Keller, Smith and Haggard [Doc. 68].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, United States Magistrate Judge David S. Cayer was designated to consider the motions and to submit recommendations for their disposition.

On January 13, 2012, the Magistrate Judge filed a Memorandum and Recommendation and Order in which he recommended that both motions be granted and that this action be dismissed with prejudice. [Doc. 79]. The Plaintiff timely filed Objections to that recommendation. [Doc. 80].

## PROCEDURAL HISTORY

The Plaintiff initiated this action pursuant to 42 U.S.C. §1983 on June 2, 2010 claiming that the Defendants had been deliberately indifferent to his serious medical needs resulting from a torn rotator cuff. [Doc. 1]. On February 3, 2011, this Court affirmed the Magistrate Judge's Order granting the Plaintiff limited expedited discovery pursuant to Federal Rule of Civil Procedure 56(f). [Doc. 39]. The Court also rejected the Objections of Defendants Alvin W. Keller, Jr. (Keller), S. Kilby (Kilby) and Robert Haggard (Haggard) to the Magistrate Judge's recommendation that their Motion for Summary Judgment be denied. [Id.]. As a result, the request for summary judgment was denied without prejudice to renewal following discovery. [Id.].

In that same Order, the Objections of Defendants Payton Turpin, M.D. (Turpin), Albert Keith Kuhne, M.D. (Kuhne) and John Morgan, F.N.P. (Morgan) were rejected and their Motion to Dismiss was denied without prejudice. [Id.]. The Plaintiff conceded that any claim against Morgan should be dismissed

and he was dismissed from the action without prejudice. [Id.]. The Plaintiff also conceded that his claim for injunctive relief failed and should be dismissed. [Id.].

On August 5, 2011, the Plaintiff dismissed Kilby from the action. [Doc. 42]. On that same date, he moved for leave to amend the Complaint. [Doc. 43]. On September 27, 2011, the Magistrate Judge granted that motion and the Plaintiff filed his Amended Complaint the next day. [Doc. 56; Doc. 57]. The pending motions followed shortly thereafter. [Doc. 65; Doc. 68].

## STANDARDS OF REVIEW

A district court reviews specific objections to a Memorandum and Recommendation under a *de novo* standard. 28 U.S.C. §636(b). "Parties filing objections must specifically identify those findings objected to." Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir.1987), overruled on other grounds Douglass v. United Services Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996). If a party makes only general objections, *de novo* review is not required. Wells v. Shriners Hospital, 109 F.3d 198, 200 (4th Cir. 1997)(boilerplate objections will not avoid the consequences of failing to object altogether). "Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge;

it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only *those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*." United States v. Midgette, 478 F.3d 616, 621 (4th Cir.), cert. denied 551 U.S. 1157, 127 S.Ct. 3032, 168 L.Ed.2d 749 (2007) (emphasis in original). Likewise, merely reiterating the same arguments made in the pleading submitted to the Magistrate Judge does not warrant *de novo* review. Id.; Veney v. Astrue, 539 F.Supp.2d 841, 846 (W.D.Va. 2008). "Allowing a litigant to obtain *de novo* review of her entire case by merely reformatting an earlier brief as an objection 'mak[es] the initial reference to the magistrate useless.'" Id. In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Midgette, 478 F.3d at 622.

In the pending motions to dismiss, the Defendants argue that the Plaintiff has failed to state claims on which relief may be granted. F.R.Civ.P. 12(b)(6). In order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to

relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully." Id. A plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, *i.e.*, the 'plausibility of entitlement to relief.'" Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 570).

> [T]he Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." To discount such unadorned conclusory allegations, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." This approach recognizes that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief."
> ...
> [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" as required by Rule 8. ... [E]ven though Rule 8 "marks a notable and generous departure from the hyper-technical, codepleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

Id. (quoting Twombly, 550 U.S. at 555, 557 and Iqbal, 129 S.Ct. at 1950).

# FACTUAL BACKGROUND

For the purpose of ruling on the motions to dismiss, the factual background of the Amended Complaint is taken as true. Francis, 588 F.3d at 193. Plaintiff Danny Ray Bridges (Bridges) alleges that during his arrest on January 9, 2005 by Rutherford County deputy sheriffs, he sustained a serious injury to his left shoulder. [Doc. 57 at 3-4]. On that same day, he was treated for the injury at the emergency department of Rutherford County Hospital. [Id. at 4]. Two days later, while still in the custody of the Rutherford County Sheriff, Bridges requested additional treatment. [Id.]. No further allegation is made concerning his treatment while in the custody of the Rutherford County Sheriff.

On January 13, 2006, Bridges was convicted and sentenced in state court to an 18 year sentence and placed in the custody of the North Carolina Department of Corrections (DOC). [Id.]. On August 10, 2006 Bridges was being held at Craggy Correctional Center (Craggy) in Buncombe County, North Carolina. [Id. at 5]. On that date he completed a Sick Call Appointment Request (SCAR) complaining of shoulder pain which had begun when he was injured during his arrest over one and a half years earlier. [Id.]. The next day, he was seen by Kilby, a licensed practical nurse at Craggy, who scheduled an

x-ray of his shoulder. [Id.].

On August 11, 2006, Dr. Turpin reviewed Kilby's notes from her examination . [Id.]. In the Complaint, Bridges alleges that, based on Kilby's treatment notes recording his pain, physical examination, loss of range of motion and length of suffering, Turpin should have suspected a torn rotator cuff, a soft tissue injury, which would not be disclosed by an x-ray. [Id. at 6]. The x-ray, which was performed on August 14, 2006, did not disclose abnormal findings. [Id.].

Bridges completed another SCAR on August 20, 2006, again complaining of pain in his left shoulder and asking to be seen by a physician. [Id.]. The next day, Kilby examined him again and noted his symptoms which he described as getting worse. [Id.]. Kilby also noted that Bridges guarded his left arm. [Id.].

On August 22, 2006, Turpin examined Bridges, noting the shoulder pain had begun over one year earlier. [Id.]. Turpin also noted that the x-ray had been normal and suspected that Bridges was malingering. [Id. at 7]. This opinion was purportedly echoed that same month by Defendant Haggard, a registered nurse who was working at Craggy. [Id.].

On August 29, 2006, Turpin administered a steroid injection to Bridges'

left shoulder.  [Id.].  Bridges received a follow up examination by John Morgan, a nurse practitioner at Craggy, who noted that the steroid injection had not resulted in significant improvement.  [Id.].

Bridges' next allegation concerning medical care is that on two occasions in January 2007, while confined at Lincoln Correctional Center (Lincoln) in Lincoln, North Carolina, he requested treatment for his shoulder pain.  [Id. at 7-8].  Despite the fact that his first SCAR was completed on January 10,he still had not been seen by January 23, 2007, causing him to complete a second SCAR.  [Id.].  On January 29, 2007, Bridges was examined by Dr. Searles who noted that a torn rotator cuff and tendinitis needed to be ruled out.  [Id. at 8].  Searles prescribed Tylenol, analgesic cream and range of motion exercises.  [Id.].  Bridges alleges that Searles should have ordered additional examinations and tests.

Bridges' does not allege any further medical care until August 27, 2008 by which time he had been transferred back to Craggy.  [Id.].  He submitted another SCAR complaining of constant pain and the inability to use his left arm for any purpose.  [Id.].  On September 3, 2008, Bridges was examined by Haggard.  [Id.].  Haggard did not order further tests to rule out a torn rotator cuff.  [Id.].

On September 25, 2008, Bridges was examined by Dr. Kuhne who concluded that his symptoms were exaggerated. [Id.at 9]. Kuhne also noted that Bridges accused an arresting officer of causing the injury during his arrest several years earlier. [Id.]. Kuhne did, however, order another round of steroid injections. [Id.].

Bridges does not allege any further requests for medical treatment concerning his left arm and shoulder. He states that "[i]n connection with another proceeding," he obtained a MRI of his left shoulder on February 25, 2009. [Id., at 12]. The radiologist diagnosed a "full thickness rotator cuff tear." [Id.]. This diagnosis was confirmed by Dr. Stephen Brockmeier, an orthopedic surgeon who examined Bridges during an "independent examination." [Id. at 13]. Brockmeier recommended arthroscopic or open rotator cuff repair because the previous course of treatment had a "low likelihood of significant functional or symptomatic improvement given his current circumstance." [Id.]. The results of these examinations were provided to the DOC by Bridges' attorney in April 2009. [Id.].

In July 2010, Bridges had surgery to repair the torn rotator cuff.[1] [Id. at

---

[1] In the original Complaint, Bridges alleged that between October 2008 and July 2010, he was receiving treatment for an unrelated medical condition which rendered him unsuitable as a surgical candidate to have his rotator cuff repaired. [Doc. 1 at 8-9].

13].  He claims the delay in treatment has resulted in permanent damage to his left arm and shoulder.  [Id.].

Bridges' First Claim for Relief is for deliberate indifferent to his serious medical needs and is raised against all Defendants.  [Id. at 14].  Contained within that claim is Bridge's allegation that the physician defendants failed to diagnose his injury and that Smith and Keller failed to adopt proper protocols for such diagnoses.  [Id. at 15-16].  His Second Claim for Relief is for an injunction to ensure that proper protocols are adopted.  [Id. at 20].  Thus, if the First Claim for Relief does not survive the motions to dismiss, the injunction claim must fail as well.

## DISCUSSION

**Objection 1: Because the District Court previously ruled that the original complaint stated a claim, the Magistrate Judge's recommendation to dismiss the Amended Complaint cannot be followed.**

In the first round of motions in this case, Bridges moved for limited, expedited discovery concerning the actual medical treatment received by him in order to learn the identities of the treating health care professionals and the records relating to his treatment, including diagnoses and dates.  The Defendants objected to such discovery, claiming that they were entitled to qualified immunity which would preclude even limited discovery.  In discussing

the issue of qualified immunity, the undersigned ruled as follows:

> Qualified immunity shields government employees performing discretionary functions from civil liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. The basic question for a court adjudicating a defense of qualified immunity ... is whether the official would have reasonably known his conduct violated clearly established law.
>
> ...
>
> The Supreme Court ... has allowed limited discovery in the face of a qualified immunity defense, subject to the discretion of the trial court. In doing so, the Court has constructed two hurdles the plaintiff must overcome to win the right to discovery. First, the trial court must insure that plaintiff has *alleged* a cognizable injury with sufficient specificity that officials are not subject to burdensome or unnecessary discovery. ... Second, ... the trial court must determine *whether the officials violated clearly established law, assuming the plaintiff's allegations as true*. If so, the plaintiff may be entitled to discovery, subject to the discretion of the trial court and the limits of Rule 26.

[Doc. 39 at 15-17] (internal quotations and citations omitted) (emphasis provided).

Thus, solely in the context of ruling on the issue of whether discovery should proceed prior to ruling on the issue of qualified immunity, the undesigned found that, taking Bridges' allegations as true, he had alleged a violation of clearly established law. [Doc. 39 at 17-18]. From this ruling, Bridges has extrapolated that the undersigned has conclusively ruled that he stated claims for deliberate indifference to his serious medical needs. [Doc.

11

80 at 2-3]. Thus, he argues, the Defendants' motions to dismiss must be denied based on the law of the case. [Id.]. In making this argument, Plaintiff completely misunderstands and misconstrues this Court's prior ruling, and goes well beyond what the Court actually ruled. After this ruling Bridges engaged in limited, expedited discovery and immediately sought and obtained permission to amend his Complaint based on that discovery. [Doc. 43; Doc. 44]. That amendment superseded the original Complaint and "render[ed] it of no legal effect." Daniels v. Arcade, L.P., __ F. App'x. __, 2012 WL 1406299 **5 (4th Cir. 2012) (quoting Young v. City of Mount Ranier, 238 F.3d 567, 572 (4th Cir. 2001)). Likewise, the filing of the Amended Complaint triggered once again the Defendants' procedural rights to move to dismiss the complaint. Fairpoint Communications, Inc. Litigation Trust v. Verizon Communications, Inc., 2012 WL 2501112 (W.D.N.C. 2012). Indeed, the Court noted in its ruling that such a motion could be filed. [Doc. 39]. Thus, the language in the Court's ruling on the previous request for discovery is in no way dispositive of the issue of whether the Plaintiff in his Amended Complaint has stated a claim upon which relief may be granted. Colavita v. Boston Scientific Corp., 2012 WL 2577086 **5 (W.D.N.C. 2012) ("Once an amended pleading is interposed, the original pleading no longer performs any function in the case.") (internal

quotation and citation omitted).

Indeed, before the Magistrate Judge, Bridges did not make this argument. [Doc. 70 at 24-25]. Instead, he there posited that the right of a prisoner to be free from deliberate indifference to serious medical need is a clearly established right. [Id.]. Thus, he argued the Defendants were not entitled to qualified immunity. [Id.]. Before the Magistrate Judge, Bridges did not claim that a prior ruling of this Court was dispositive of the question of stating a claim upon which relief may be granted. Where a party asserts a claim in the Objections which was not asserted in support of or in opposition to the motion before the Magistrate Judge, *de novo* review is not warranted. Price v. Dixon, 961 F.Supp. 894 (E.D.N.C. 1997). A claim cannot be raised for the first time in objections to a memorandum and recommendation. Id.

**Objection 2: The Magistrate Judge failed to consider the allegations in the light most favorable to the Plaintiff.**

In this Objection, Bridges claims that the Magistrate Judge was obligated to discuss each medical incident and explain why each, viewing the allegations in the light most favorable to him, failed to rise to the level of deliberate indifference.[2] [Doc. 80 at 6-7]. Despite painting with this broad

---

[2]Before the Magistrate Judge, however, Bridges argued it was improper to "isolate and analyze each factual allegation separately and out of context of the other factual allegations[.]" [Doc. 75 at 12-13].

brush, Bridges' counsel limits his Objections to the Magistrate Judge's conclusions related to the conduct of two physicians, Searles and Kuhne. [Id.]. Thus, to the extent that counsel did not make specific objections to other portions of the Memorandum and Recommendation, *de novo* review is not warranted. Midgette, 478 F.3d at 622.

In order to state a claim pursuant to §1983, a plaintiff must allege a violation of a cognizable constitutional right. Hood v. Suffolk City School Board, __ F. App'x. __, 2012 WL 812369 (4th Cir. 2012). Section 1983 "is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (internal quotation and citation omitted). Bridges alleges that his rights secured by the Eighth Amendment have been violated. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference to a prisoner's "serious medical needs" is prohibited by the Eighth Amendment. Id. at 104-05.

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation and citation

omitted).  This is the objective component of a violation of the Eighth Amendment.  Id.

There is also a subjective component of such a violation, deliberate indifference.  Id.  "The subjective component ... sets a particularly high bar to recovery."  Id. (internal citation omitted).

> Deliberate indifference is a very high standard - a showing of mere negligence will not meet it.  Deliberate indifference requires a showing that the defendants actually knew of and ... ignored a [prisoner's] serious need for medical care.

Young, 238 F.3d at 575-76 (discussing standard applicable to pre-trial detainee and noting same as Eighth Amendment standard).  Deliberate indifference requires more than "negligen[ce] in diagnosing or treating a medical condition[.]"  Farmer v. Brennan, 511 U.S. 825, 835, 114 S.Ct. 1970 (1994) (quoting Estelle, 429 U.S. at 106).  Only government conduct that "shocks the conscience" can support an Eighth Amendment claim.  Parrish ex rel. Lee v. Cleveland, 372 F.3d 294,  302 n.11 (4th Cir. 2004) (noting standard is the same as that for Eighth Amendment).  In order to state a claim for deliberate indifference, a prisoner must show actual knowledge of and subsequent ignoring of his serious need for medical treatment.  Id., at 303. It is not enough that the official in question "*should have*" recognized the need; he must have *actually perceived it.*  Id.  Likewise, it is not sufficient that the

15

official *"should have"* recognized that his actions were insufficient; he must have *actually recognized* that his conduct was insufficient. Id.

Bridges' objection related to Searles centers around Searles' notation that a torn rotator cuff needed to be ruled out. [Doc. 80 at 6]. Searles, he claims, recognized a serious medical need and failed to act upon it by following up with additional testing other than the x-ray.[3] [Id.].

Bridges' treatment notes, which were available to Searles disclosed that he had sustained in injury to his left shoulder in January 2005. He was treated at that time. The next time that Bridges complained about symptoms was in August 2006 when he was seen and/or received treatment on seven separate occasions at Craggy. Bridges did not complain again until January 2007, at which time he was examined by Searles. Searles treatment notes actually recorded that both tendinitis and a torn rotator cuff needed to be ruled out. Bridges did not make further complaint until August 2008, over a year a half later when he was back in custody at Craggy.

To the extent that Bridges' objection is based on Searles' failure to order additional testing and/or treatment, the right of a prisoner to medical treatment is limited to treatment that is medically necessary, not that which is medically

---

[3]Bridges did not, however, allege that Searles had the authority to place such an order.

desirable. Saunder v. McPeak, 2012 WL 1067630 **2 (W.D.Va. 2012) (citing Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)). "[S]ociety does not expect that prisoners will have unqualified access to health care" or to medical treatment of their choosing. Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Searles prescribed Tylenol, analgesic cream and range of motion exercises. Bridges did not make further complaint. Subsequent dissatisfaction or even disagreement with a physician's treatment does not state an Eighth Amendment claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Mathis v. Wang, 2012 WL 366851 (W.D.Va. 2012).

Indeed, Searles' treatment notes[4] show that he did not actually know that Bridges had a torn rotator cuff. The notes show that, at most, he suspected that Bridges may have had either tendinitis, a torn rotator cuff or both. Parrish *ex rel*. Lee, 372 F.3d at 303. He thus could not have deliberately ignored the condition, as he did not *know* Plaintiff had the condition but merely suspected that he *might*. Id. Negligence "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106; Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998). The question is not

---

[4] Plaintiff alleges the contents of the treatment notes in the Amended Complaint. [Doc. 57 at 8].

"how obvious a condition must be before a doctor is deliberately indifferent in not diagnosing it." Id. "The correct question is whether the doctor subjectively knows of the serious medical condition itself, not the symptoms of the serious medical condition." Id. (quoting Farmer, 511 U.S. at 837). Although Bridges has alleged that Searles should have ordered additional tests in order to "rule out" a torn rotator cuff, this is merely an allegation that Searles knew the symptoms of that injury. Id. This is insufficient to satisfy the requirement that the Plaintiff allege Searles knew Bridges had that injury and ignored it. Id.

Bridges' other example of deliberate indifference relates to his treatment by Kuhne. In late September 2008, Bridges was examined by Kuhne who concluded that Bridges' complaints were exaggerated compared to his medical findings. Kuhne noted that Bridges' complaints may have been related to Bridges' accusations that the injury had been caused by an arresting officer. Bridges argues that despite two years of medical records and Searles' suspicion of a torn rotator cuff, Kuhne blithely ignored that medical evidence and concluded that he was malingering.

To the extent that Kuhne disagreed with Searles' notation that a torn rotator cuff needed to be ruled out, disagreement between professionals over a prisoner's course of treatment is not deliberate indifference. United States

v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011). "The Eighth Amendment's prohibition on cruel and unusual punishment is not violated when a doctor simply resolves the question whether additional diagnostic techniques or forms of treatment is indicated." Self v. Crum, 439 F.3d 1227, 1232 (10th Cir.), cert. denied 549 U.S. 856, 127 S.Ct. 131, 166 L.Ed.2d 96 (2006) (internal quotation and citation omitted). Likewise, Kuhne's diagnosis of malingering is not alone sufficient to show deliberate indifference to a serious medical need. Wright, 766 F.2d 849. This is true even if Kuhne's diagnosis was wrong. Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986) (mis-diagnosis not the equivalent of deliberate indifference).

The Court therefore rejects Bridges' specific objections based on its *de novo* review. Having conducted a careful review of those portions of the Memorandum and Recommendation related to this issue to which Bridges did not file specific objections, the Court finds them factually and legally correct.

**Objection 3: The Magistrate Judge applied the incorrect standard of review to the factual allegations of his Amended Complaint.**

In this objection, Bridges claims that because the Magistrate Judge cited Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998), he incorrectly applied the summary judgment standard of review instead of that applicable to a motion to dismiss. In Johnson, the United States Court of Appeals for the Fourth

Circuit considered an appeal by a prisoner from the entry of summary judgment in favor of his medical providers.  Id.  The Circuit discussed the legal definition of deliberate indifference to serious medical need and held that a missed diagnosis of malingering instead of cancer constitutes negligence rather than deliberate indifference.  Id. at 168.

The Magistrate Judge cited the Johnson opinion as holding that a missed diagnosis of malingering does not constitute deliberate indifference to serious medical needs.   There is nothing in the Memorandum and Recommendation to indicate that the Magistrate Judge applied the standard of review applicable to a motion for summary judgment.  Plaintiff's arguments manifest and obvious misreading of that Memorandum and Recommendation.

**Objection 4: The Magistrate Judge erroneously concluded that the Amended Complaint failed to state a claim of supervisory liability.**

The Magistrate Judge concluded that because Bridges had failed to state a claim for deliberate indifference to serious medical need, he also failed to state a claim for supervisory liability.  [Doc. 79 at 10-11].  Bridges objects, claiming that in the Amended Complaint he has alleged that "Smith refused to authorize an appropriate test to determine whether Bridges actually had such a serious injury because of the expense of such tests as compared to inadequate tests such as an x-ray." [Doc. 80 at 13] (citing Doc. 57 at 11).

Thus, he argues that whether or not a claim for deliberate indifference was stated against the physician and nurse defendants, the claim remains against Smith in her role as Medical Director for DOC "because Smith is alleged to have reviewed Bridges' medical records, been aware of their contents and *made the deliberate choice to refuse to allow an appropriate test*[.]"[5] [Doc. 80 at 13] (emphasis provided).

The allegation of the Amended Complaint in this regard actually reads as follows:

> On information and belief, Smith, personally and in her capacity as Medical Director for NCDOC has refused to allow for proper diagnostic tests for soft tissue injuries because of the expense of such tests as compared to inadequate tests such as an x- ray.

[Doc. 57 at 11]. At no point in the Amended Complaint is it alleged that Smith, having reviewed Bridges' treatment records and being aware of the need for further tests, refused to authorize the same for Bridges. In fact, in the Complaint, it is alleged that Searles failed to order such tests. [Doc. 57 at 8]. Bridges therefore has not alleged that Smith refused to order a test that had been determined to be necessary for his medical needs. For this reason alone, the objection is rejected.

---

[5]Bridges made no objection to the recommendation that any such claim against Keller be dismissed.

Section 1983 liability on the part of ... supervisory defendants requires a showing that ... the supervisory defendants failed promptly to provide an inmate with needed medical care;[6] ... [or] that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations.

...

Supervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury. The plaintiff not only must demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must also show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive [practices]. It is insufficient merely to show deliberate indifference to a serious medical need on the part of subordinate physicians.

...

[W]here the plaintiff-inmate's complaint nowhere indicated that supervisory defendants neglected his needs, and where the prison physician promptly saw the plaintiff and engaged in a course of treatment, the supervisory defendants were beyond any doubt not liable to the plaintiff under any conceivable state of facts.

Miltier v. Beorn, 896 F.2d 848, 854-55 (4th Cir. 1990), abrogated on other grounds Farmer, 511 U.S. at 842-43.

The allegations of Bridges' Amended Complaint disclose that each time he complained or requested medical care, he was seen and received a course of treatment. Id. Although Bridges argues in his Objections that Smith

---

[6]As noted, the Amended Complaint does not allege that Smith failed to provide Bridges with prompt medical care by refusing to order tests.

refused to order further testing for him, at no point in the Amended Complaint is this allegation made. It is there alleged that Searles refused to order the tests based on a missed diagnosis or failure to diagnose. It is not alleged that Searles refused to order further testing due to a custom, policy or protocol. Caraway v. Beck, 2010 WL 3386846 (E.D.N.C. 2010) (citing Slakan v. Porter, 737 F.2d 368, 373 (4th Cir.), cert. denied 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985)) (complaint dismissed where no allegation that supervisor knew policies and procedures concerning medical care created pervasive and unreasonable risk of harm). Nor has Bridges shown why Smith was not entitled to rely on Searles' expertise as well as that of the other medical providers, expertise and treatment which was not so incompetent or inadequate "as to shock the conscience." Miltier, 896 F.2d at 851.

Bridges' objection to the recommendation that supervisory liability claims against Smith be dismissed is rejected.

## Objection 5: The Magistrate Judge erred in recommending dismissal of the policy and procedures claim.

The Magistrate Judge concluded that Bridges had failed to plead sufficient facts to support any constitutional violation. [Doc. 79 at 11]. As a result, his claim based on the policies and procedures formulated and issued by Keller and Smith must fail. [Id.]. In his objection to the recommendation,

Bridges states merely that he

> contends that the Magistrate Judge erred in concluding that [he]
> failed to plead sustainable claims for deliberate indifference.
> Consequently, if the Court determines that the Amended
> Complaint states a claim against any of the defendants for
> deliberate indifference, then Bridges' policy and procedure claims
> should not be dismissed. Alternatively, Bridges submits that the
> MRO fails to provide Bridges with sufficient information to lodge
> any additional objections to the basis for the Magistrate Judge's
> determination that Bridges' policy and procedure claims should be
> dismissed.

[Doc. 80 at 13-14].

As to the last purported objection, it is no objection at all but merely an attempt by Plaintiff's counsel to "hold his cards" instead of "folding them." "[G]eneral and conclusory objections that do not direct the court to a specific error" do not warrant *de novo* review." Orpiano, 687 F.2d at 47; Wright, 766 F.2d at 845-46 (no appellate review preserved absent filing of specific objections).

The Court has determined that Bridges has failed to state any claims for deliberate indifference to serious medical needs. As a result, the policy and procedure claims are also dismissed.

**Conclusion.**

The Court has conducted a *de novo* review of the specific objections raised by the Plaintiff. Having done so, the Court finds the Magistrate Judge's

24

conclusions and recommendations are legally and factually correct and will adopt them.

### ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Objections pursuant to Federal Rule of Civil Procedure 72 and 28 U.S.C. §636 to Memorandum and Recommendation and Order dated January 13, 2012 [Doc. 80] are hereby **REJECTED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss First Amended Complaint of Defendants Payton Turpin, M.D., Albert Keith Kuhne, M.D. and Anthony D. Searles, M.D. [Doc. 65] and the Motion to Dismiss for Failure to State a Claim of Defendants Keller, Smith and Haggard [Doc. 68] are hereby **GRANTED** and this action is hereby **DISMISSED** with prejudice.

Signed: August 6, 2012

Martin Reidinger
United States District Judge